UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SURE FILL & SEAL, INC., et al.,      :
                                      :
            Plaintiffs,               :
                                      :
v.                                    : CASE NO. 8:08-CV-882-T-17TGW
                                      :
GFF, INC.,                            :
                                      :
            Defendant.                :
_____ :

## REPORT AND RECOMMENDATION

This lawsuit arose out of the plaintiffs' claim that the defendant breached its obligation to pay them $80,878.29, which was the remainder owed for the purchase and installation of a food cup filling machine. The lawsuit was resolved, and the parties agreed in the Settlement Agreement to dismiss their claims.

The defendant, prompted by the plaintiffs' failure to dismiss their claims, filed a Motion to Enforce the Settlement Agreement (Doc. 158). In response, the plaintiffs filed a Motion to Extend the Time to Dismiss the Case (Doc. 159) pending resolution of a Motion for Sanctions (Doc. 162) that

alleges the defendant and its counsel asserted frivolous claims and engaged in outrageous conduct during the litigation of this case.

These motions were referred to me for a report and recommendation (Doc. 168). Because the plaintiffs have not asserted any legal justification for failing to dismiss their claims in accordance with the Settlement Agreement, I recommend that the Motion to Enforce the Settlement Agreement (Doc. 158) be granted, and the Motion to Extend the Time to Dismiss the Case (Doc. 159) be denied. Further, I recommend that the Motion for Sanctions (Doc. 162) be denied because the plaintiffs have not come close to demonstrating that the defendant engaged in sanctionable conduct, and virtually all of the bases asserted for the imposition of sanctions are not even cognizable.

I.

The plaintiffs are in the business of manufacturing filling and sealing machinery used in the food service industry (Doc. 1, ¶5). The defendant entered into an agreement to purchase from the plaintiffs a food filling and sealing machine (the machine) (id., ¶18). This agreement is memorialized in a "Revised Quotation" (id.).

After delivery and installation of the machine at the defendant's business, the defendant allegedly failed to pay the balance owed on the machine. Consequently, the plaintiffs filed this lawsuit, alleging breach of contract, breach of collateral contract, and a quantum meruit claim (Doc. 1).

The defendant denied the plaintiffs' claims, and asserted counterclaims for breach of contract and breach of express warranty, alleging that the machine did not perform in accordance with specifications, and the plaintiffs failed to fix it (Doc. 15). The defendant claimed further that it had to redesign the machine for it to operate properly.

An unusually contentious discovery period followed, a primary cause of which appeared to be counsels' failure to cooperate with each other. For example, court intervention was necessary for the entry of a confidentiality order, which parties in this court normally agree upon among themselves. Further, numerous motions were filed because the parties could not agree upon the scheduling of depositions (see Doc. 149). Moreover, the plaintiffs filed several motions to compel discovery; however, the merits of these motions were not reached because each motion failed to comply with this court's local rules (Docs. 45, 49, 93). The parties' disagreements were

also the basis of several motions for sanctions by the plaintiffs. However, they were denied on procedural grounds, or withdrawn.

Notwithstanding these disputes, the parties subsequently settled their claims. The Settlement Agreement and Mutual Release ("Settlement Agreement"), dated December 23, 2009, provided in pertinent part (Doc. 158-1, pp. 6-8):

> B. In order to avoid further litigation and without admission or concession of any liability, fault, fact, claim or defense by any party hereto, [the parties] now desire to settle finally all claims asserted in the Action ... on the terms and conditions set forth in this Settlement Agreement and Mutual Release....
>
> ....
>
> 1. Consideration. As of the date of this Settlement Agreement, [the defendant] agrees to pay [the plaintiffs] the sum of $50,000.00 and each party hereby shall dismiss its respective complaints, counterclaims and prayers for the relief in the Action, and shall release forever any and all claims against each other arising out of the subject matter of the Action, on the terms and conditions stated in this Settlement Agreement.
>
> ....
>
> 3. Release. [The plaintiffs], including each of the individuals party to this Settlement Agreement, ... and [the defendant] hereby release each other, their ... officers, directors ... attorneys,

representatives, reinsurers, insurers and employees, and each of them, from the Claims made heretofore in the Action and furthermore from any and all claims, known and unknown, causes of action, demands, liabilities, or obligations arising out of, related to, or in any way connected with the Claims asserted in the Action....

....

7. <u>Attorneys' Fees and Costs</u>. The Parties shall bear their own attorneys' fees and costs incurred in connection with the Action.... Should any party hereto institute any action or proceeding to enforce any provision of this Settlement Agreement ... the prevailing party in such matter shall be entitled to recover from the losing party all reasonable attorneys' fees, costs and expenses ... incurred by the prevailing party in such action or proceeding.

On January 5, 2010, the parties filed with the court a "Joint Notice and Motion to Stay and Request for Order Directing Consummation of Settlement Agreement," which stated that "the parties have agreed to terms of settlement which should be consummated on or before January 11, 2010" (Doc. 156, p. 1). Consequently, on January 6, 2010, the court stayed this lawsuit, and directed the parties to consummate the Settlement Agreement and dismiss the case within 90 days, or later if an extension is requested and approved (Doc. 157).

Pursuant to the Settlement Agreement, the plaintiffs received from the defendant on January 11, 2010, a check for $50,000 (Doc. 158-1, p. 1). In correspondence dated February 4, 2010, plaintiffs' counsel confirmed that the check was cashed, and stated that "the settlement has been consummated as per the Court's Order of January 6, 2010" (Doc. 158-3).

However, in that same correspondence, plaintiffs' counsel stated that he refused to stipulate to a dismissal of the plaintiffs' claims because the plaintiffs intended to file a motion for sanctions against the defendant and its counsel (id.). Consequently, on February 24, 2010, the defendant filed the Motion to Enforce the Settlement Agreement (Doc. 158), alleging that the plaintiffs refused to dismiss their claims as they had agreed in the Settlement Agreement.

The plaintiffs, in a document inaptly titled "Plaintiffs' Memorandum in Opposition to Motion to Quash and Motion to Extend Time to Dismiss the Case," argue they have not refused to dismiss their claims, but that they "seek to keep the action administratively open for the resolution of their Motion for Sanctions" (Doc. 159, p. 2). There was no motion for sanctions pending at the time the Settlement Agreement was executed, or at the time the plaintiffs filed this Motion to Extend Time.

On March 12, 2010, the plaintiffs filed the Motion for Sanctions pursuant to Rules 11(c), 26(g), and 37(a)(5) of the Federal Rules of Civil Procedure; Fla. Stat. §57.105; 28 U.S.C. 1927; Florida's inequitable conduct doctrine; and the inherent power of the Court (Doc. 162). In essence, the plaintiffs argue that the defendant's counterclaims and defenses were frivolous, and that the defendant stonewalled their discovery efforts. Much of the motion merely reargues disputes raised unsuccessfully during the litigation.

The plaintiffs seek as sanctions "a monetary penalty payable to Plaintiffs" totaling more than three-quarters of a million dollars, consisting of (Doc. 162, p. 24):

> legal costs and fees not to exceed $248,445.56 ...
> loss of income from the underlying transaction in
> the approximate amount of $31,000 and $20,000
> taxes owed to state of California with interest,
> [and] lost future profits and wages not to exceed
> $500,000....

The plaintiffs also vaguely mention the imposition of "other and proper relief as this Court deems fair and just..." (id.).

The defendant argues that the plaintiffs' Motion for Sanctions is meritless (Docs. 165, 166). Further, it contends that the Settlement

Agreement, which broadly releases the defendant and its counsel from liability for claims related to this litigation, bars these claims against them (Doc. 165). Oral argument was subsequently conducted on the motions (Doc. 173).

During oral argument, plaintiffs' counsel was cautioned that the motion for sanctions appeared unmeritorious and that, although sanctions payable to the court may not be waived in a settlement, the plain language of the Settlement Agreement barred monetary sanctions payable to the plaintiffs. In response, counsel changed the focus of his argument, disingenuously contending that the motion's purpose was to protect the integrity of the court. I am skeptical of this representation, as the only sanction specifically requested in the motion was a monetary award to the plaintiffs totaling three-quarters of a million dollars (see Doc. 162, p. 24), and counsel remained steadfast in pursuing this motion notwithstanding my admonitions that it appeared meritless and was a great waste of court resources.

Moreover, I stated at the hearing that, based on my experience in this case, the plaintiffs are primarily responsible for unnecessarily protracting this litigation. This is not to say that the defendant is blameless. However, the plaintiffs' presentations of untenable arguments, and repeated

flouting of the local rules and Federal Rules of Civil Procedure, as reflected in their numerous unsuccessful motions, show that the plaintiffs have unnecessarily multiplied the proceedings in this case. The groundless motion for sanctions, which is replete with scurrilous and impertinent attacks against the defendant (see, e.g., Doc. 162, p. 5, ¶¶20, 22), is another example of the plaintiffs' waste of court resources, and exemplifies the plaintiffs' role in causing dissension between the parties. Consequently, as I informed the parties at the hearing, if sanctions are warranted, I will recommend that they be assessed against the plaintiffs, not the defendant.

## II.

The defendant seeks to enforce the Settlement Agreement provision which provides that "each party hereby shall dismiss its respective complaints, counterclaims and prayers for the relief in the Action...." (Doc. 158-1, p. 2, ¶1). As indicated, the plaintiffs have not dismissed their claims although they received $50,000 to do so.

The defendant filed this motion after the plaintiffs informed it in correspondence dated February 4, 2010, that they would not stipulate to a motion to dismiss the claims, and would instead seek a stay of dismissal pending resolution of a Motion for Sanctions (which they had yet to file)

(Doc. 158-3). The plaintiffs subsequently filed a Motion to Extend Time to Dismiss the Case (Doc. 159) and a Motion for Sanctions (Doc. 162).

A district court has "inherent power to summarily enforce settlement agreements entered into by parties ... in a pending case." Ford v. Citizens and Southern National Bank, 928 F.2d 1118, 1121 (11th Cir. 1991). "The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract." Id. at 1122.

The plaintiffs do not dispute that the Settlement Agreement is an enforceable contract. Rather, they assert that they have not dismissed the claims because they wish "to keep the action administratively open for the resolution of their Motion for Sanctions" (Doc. 159, p. 2). However, a pending motion for sanctions is not a legal justification for the plaintiffs' failure to fulfill their obligation under the Settlement Agreement.

Thus, in the Settlement Agreement the only condition on the plaintiffs' obligation to dismiss their claims is the defendant's payment of $50,000 consideration (Doc. 158-1, p. 2, ¶1), which has been fulfilled.[1]

---

[1] Further, the plaintiffs appear to acknowledge that payment of $50,000 was the only condition precedent to the dismissal of the claims in e-mail correspondence between the parties' counsel (see Doc. 167-2, p. 9)(plaintiffs' counsel stating "No dismissal until the check has cleared!").

Further undermining the plaintiffs' proffered reason for failing to dismiss the claims is the plaintiffs' acknowledgment that dismissal of the claims does not divest the court of jurisdiction to consider the Motion for Sanctions (Doc. 159, p. 10). See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96 (1990)(a district court has the authority to consider and rule upon the collateral issue of sanctions, although the case from which allegedly sanctionable conduct arose is no longer pending).

The plaintiffs argue further that their failure to dismiss the claims is not a breach of the Settlement Agreement because the "settlement agreement does not provide a specific date on which the claims are to be dismissed" (Doc. 159, p. 3). When a settlement agreement does not fix a date for performance of its terms, the law implies a reasonable time. De Cespedes v. Bolanos, 711 So.2d 216, 218 (Fla. App. 1998).[2]

By the parties' terms, the settlement was to "be consummated on or before January 11, 2010," and the plaintiffs received on that date a $50,000 settlement check (Docs. 156, p. 1; 158-1, p. 1). Therefore, a reasonable deadline to dismiss the claims would have been soon thereafter.

---

[2] The Settlement Agreement is governed by Florida law (see Doc. 158-1, p. 4. ¶8).

Several months have passed since the plaintiffs cashed the $50,000 settlement check, and it is substantially beyond the court's 90-day dismissal Order, without any legal justification for delaying dismissal of the claims. Consequently, because the plaintiffs have failed to dismiss their claims in a reasonable amount of time, they are in breach of the Settlement Agreement.

Finally, as discussed below, the Motion for Sanctions is meritless. Therefore, in all events, there is no basis for delaying any further the plaintiffs' contractual obligation to dismiss their claims.

Accordingly, I recommend that the defendant's Motion to Enforce the Settlement Agreement (Doc. 158) be granted, the plaintiffs' Motion to Extend Time to Dismiss the Case (Doc. 159) be denied, and the plaintiffs be compelled forthwith to dismiss their claims against the defendant in accordance with the Settlement Agreement.

III.

On March 12, 2010, more than two months after the parties settled this case, the plaintiffs filed a Motion for Sanctions against the defendant and its counsel pursuant to Rules 11(c), 26(g), and 37(a)(5) of the Federal Rules of Civil Procedure; Fla. Stat. §57.105; 28 U.S.C. 1927;

Florida's inequitable conduct doctrine; and the inherent power of the court (Doc. 162). The plaintiffs' complaints are numerous, and each one is not worthy of repetition. In sum, the plaintiffs contend, in a hyperbolic manner, that the defendant asserted frivolous claims and stonewalled their discovery efforts (id.).[3]

As the defendant notes, most of these allegations were previously raised in other motions filed by the plaintiffs during the litigation, including three other motions for sanctions that were denied due to the plaintiffs' repeated failures to follow procedural rules, or withdrawn (Docs. 24, 27, 31, 45, 89, 94). Some of these contentions, furthermore, were not resolved in the plaintiffs' favor (see, e.g., Docs. 45, 149). The plaintiffs, inexplicably, have reasserted these stale contentions months after the parties agreed to settle the case.

The plaintiffs request sanctions in the form of a monetary award to them totaling more than three-quarters of one million dollars (Doc. 162,

_____

[3]The plaintiffs' rhetoric is exemplified by the plaintiffs' allegation that they were "physically harassed" by the defendant's security personnel when they went to inspect the filling machine (Doc. 162, p. 4, ¶12). In this regard, the plaintiffs stated at the hearing that, when they arrived at the defendant's facility, they were told to wait "until they call the appropriate attorney" and "somebody [was] trying to point" at "[them] as if shooting [them]" (Doc. 173, pp. 6-7).

p. 24). At the end of the motion's wherefore clause, the plaintiffs also vaguely mention the imposition of "other and proper relief as this Court deems fair and just..." (id.).

The defendant argues that the motion for sanctions is meritless and, in all events, it is barred by the Settlement Agreement, in which the plaintiffs agreed to release the defendant and its counsel from all claims "related to, or in any way connected with the Claims asserted in this action" (Doc. 158-1, p. 3, ¶3; Doc. 164). Additionally, the defendant contends that the plaintiffs expressly waived in the Settlement Agreement claims for attorney's fees and costs (Doc. 158-1, p. 4, ¶7) ("The Parties shall bear their own attorneys' fees and costs incurred in connection with the Action").

The plaintiffs disagree that the Settlement Agreement bars their Motion for Sanctions (Docs. 159, 162). The plaintiffs assert two grounds in support of their contention that the Motion for Sanctions is not barred by the Settlement Agreement. First, they argue that "[s]anctions for misconduct during litigation are not covered by the Settlement Agreement" (Doc. 162, p. 7). Alternatively, the plaintiffs contend that their motion remains viable because "sanctions [are not] dischargeable by settlement" (Doc. 159, p. 8).

A. The plaintiffs' contention that the language of the Settlement Agreement does not encompass their claims of misconduct is meritless. As indicated, the Settlement Agreement broadly releases the defendant and its attorneys from "any and all claims, known or unknown, causes of action, demands, liabilities, or obligations arising out of, related to, or in any way connected with the Claims asserted in the Action...." (Doc. 158-1, p. 3, ¶3).

The plaintiffs' allegations that the defendant's counterclaims and defenses were frivolous directly implicate the merits of the action, and are therefore barred by the Settlement Agreement. Further, the allegations that the defendant stonewalled discovery, and the plaintiffs' various other assertions of "egregious conduct [by the defendant] and/or its counsel during the prosecution of the action" (Doc. 159, p. 2), are clearly related to, and connected with, the claims in this action. Accordingly, they are also barred by the Settlement Agreement. Moreover, the plaintiffs' request for attorney's fees and costs is, under any theory, barred by the Settlement Agreement provision that states both parties agree to bear their own fees and costs (Doc. 158-1, p. 4, ¶7).

The plaintiffs argue vaguely that their allegations are not covered by the Settlement Agreement because they do not "arise[] ... from the subject

-15-

matter of its claim or ... [the] counterclaim" (id., pp. 8-9). The plaintiffs'
argument that the defendant's contentions were frivolous certainly arises from
the subject matter of the claim. Further, this contention ignores the
Settlement Agreement provision that absolves the parties from liability for
claims "related to, or in any way connected with the Claims asserted in the
Action" (id., p. 3, ¶3).

Similarly meritless is the plaintiffs' argument that sanctions are
not covered by the Settlement Agreement because "it would have been
entirely possible for [the defendant] to defend against the action without [its
alleged obdurate] tactics" (Doc. 159, p. 9). The plaintiffs cite no legal
authority for this proposition. In all events, this contention does not render
the plaintiffs' allegations unrelated to, or unconnected with, this action. In
sum, the plaintiffs' argument that their allegations of misconduct against the
defendant are not encompassed within the Settlement Agreement is baseless.

B. The plaintiffs also argue that, notwithstanding the Settlement
Agreement, their motion remains cognizable because "sanctions [are not]
dischargeable by settlement" (id., p. 8). Although the court's right to sanction
parties for misconduct remains following a settlement, "compensatory
sanctions may be bargained away by the parties." Fleming & Associates v.

Newby & Tittle, 529 F.3d 631, 640 (5th Cir. 2008); see Clark Equipment Co.
v. Lift Parts Mfg. Co. Inc., 972 F.2d 817, 819 (7th Cir. 1992); Perkins v.
General Motors Corp., 965 F.2d 597, 600 (8th Cir. 1992), cert. denied, 506
U.S. 1020 (1992); Kleiner v. First National Bank of Atlanta, 751 F.2d 1193,
1199 (11th Cir. 1985).

   Thus, analogizing this circumstance to a tort claim in which a
plaintiff bargains away its interest in enforcing negligence rules, courts have
ruled that parties may bargain away their right to receive compensatory
damages caused by their opponents' sanctionable conduct. Fleming &
Associates v. Newby & Tittle, supra, 529 F.3d at 639. On the other hand, a
court's interest in having the rules of procedure obeyed never disappears, and
therefore it "may sanction abusive behavior directly by imposing a punitive
fine made payable to the court or by imposing non-monetary sanctions,"
notwithstanding a settlement. Id. (quoting Clark Equipment Co. v. Lift Parts
Mfg. Co., supra). Consequently, the Eleventh Circuit held in Kleiner v. First
National Bank of Atlanta, supra, 751 F.2d at 1193, that a settlement mooted
an award of attorneys' fees as a sanction. Other appellate courts also
recognize that parties may bargain away their rights to compensatory
sanctions. See, e.g., Perkins v. General Motors Corp., supra, 965 F.2d at

-17-

600; Clark Equipment Co. v. Lift Parts Mfg. Co. Inc., supra, 972 F.2d at 819;

Agee v. Paramount Communications, Inc., 114 F.3d 395, 399 (1st Cir. 1997);

Riverhead Sav. Bank v. National Mortg. Equity Corp., 893 F.2d 1109, 1112

(9th Cir. 1990).

Consequently, the plaintiffs in this case bargained away their

rights to the compensatory damages they seek in this motion when they

executed the Settlement Agreement in exchange for $50,000 (see Doc. 158-1,

pp. 2-3, ¶¶1, 3) (releasing the defendant and its attorneys from "any and all

claims, known and unknown, causes of action, demands, liabilities, or

obligations arising out of, related to, or in any way connected with the Claims

asserted in the Action"). Accordingly, the plaintiffs are barred under the

terms of the Settlement Agreement from seeking the monetary relief

requested in the motion.

Moreover, since the Settlement Agreement moots the plaintiffs'

claims for compensatory damages, there is no legal basis for evaluating the

merits of the plaintiffs' claims under provisions which only afford attorneys'

fees and expenses as a sanction. Accordingly, the plaintiffs are not entitled

to any relief under 28 U.S.C. 1927; Rule 37(a)(5), F.R.Civ.P.; Fla. Stat.

§57.105; and Florida's inequitable conduct doctrine. See 28 U.S.C. 1927

(awards costs, expenses, and attorneys' fees to the opposing party); Rule 37(a)(5), F.R.Civ.P. (awards the prevailing party expenses incurred in making or opposing a discovery motion); Fla. Stat. §57.105 (awards reasonable expenses to the prevailing party); Moakley v. Smallwood, 826 So.2d 221, 224 (Fla. 2002)(the court may assess attorneys' fees for the extreme misconduct of an attorney under the inequitable conduct doctrine).[4]

## IV.

Remaining for consideration are the plaintiffs' claims of sanctionable conduct under the court's inherent authority, and Rules 11 and 26(g) of the Federal Rules of Civil Procedure. The court may impose punitive sanctions, such as a monetary fine payable to the court, or a non-monetary directive, for conduct violative of these provisions, notwithstanding the parties' Settlement Agreement. However, no sanctions are warranted under these provisions because the plaintiffs' claims are not cognizable or are meritless.

---

[4]Further, a claim under Rule 37 is clearly untimely. See, e.g., Brandt v. Vulcan, Inc., 30 F.3d 752, 756-57 (7th Cir. 1994)(denying Rule 37 sanctions as untimely when the plaintiff suspected long before trial that the discovery responses were incomplete but "let the matter rest"); see Butler v. Pettigrew, 409 F.2d 1205, 1207 (7th Cir. 1969)(no timely Rule 37 motion was filed and court stated that "plaintiffs by their own inaction waived the[ir] rights").

A. Rule 11(c), F.R.Civ.P.

The plaintiffs allege in their Motion for Sanctions that the defendant asserted frivolous counterclaims and defenses in violation of Rule 11, F.R.Civ.P. (Doc. 162, pp. 3, 5, 8, 11-12). The defendant disputes these allegations (Docs. 165, 166).

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." Peer v. Lewis, __ F.3d __, 2010 WL 1997112 at *3 (11th Cir. 2010). Under Rule 11, sanctions may be imposed when a party submits a pleading to the court that: (1) has no reasonable factual basis, (2) is not legally tenable, or (3) is submitted in bad faith for an improper purpose. Riccard v. Prudential Ins. Company, 307 F.3d 1277, 1294 (11th Cir. 2002). The imposition of Rule 11 sanctions is a severe measure that is not warranted when a party's evidence to support a claim is "merely weak." Id.

The plaintiffs argue that the defendant "had no supporting documentation for its claims" and the defendant improperly sought damages for lost production, which is expressly excluded by the warranty (Doc. 162, pp. 4, 11, 12, 20). The contention that the defendant's claims and defenses were so baseless as to warrant the imposition of Rule 11 sanctions is

substantially undercut by the plaintiffs' decision to "settle finally all claims" "without admission or concession of any liability, fault, fact, claim or defense by any party" (Doc. 158-1, p. 2, ¶B).

Further, with regard to damages, the defendant explained that it was not seeking damages for lost production, but rather it alleged a loss of customer goodwill (Doc. 165, p. 3 n.3). The defendant also asserts that it supported its claims with "hundreds of documents, including but not limited to production records, purchase orders, and work orders for new parts that w[ere] required ... in order to fix the defective machine"(id., p. 3; Doc. 166).

The plaintiffs did not controvert this representation at the hearing; rather, counsel merely argued that the defendant had not produced a "blueprint" of the redesigned machine (Doc. 173, p. 10). The absence of such a document does not render the defendant's claims baseless. Consequently, the plaintiffs have failed to create a factual issue that the defendant's counterclaims and defenses did not meet minimal pleading standards. See Riccard v. Prudential Ins. Company, supra.[5]

---

[5]The plaintiffs also allege that Rule 11 sanctions are warranted for "defectively signed" documents (Doc. 162. p. 5). The plaintiffs argue that "[s]ome of the [defendant's] filings ... were not signed and/or certified by the attorney filing them," and others were "filed and/or certified by Attorney ... Reyes," who is an associate in the defense counsel's law firm, but not counsel of record (id.). The plaintiffs, however, have not cited any legal

In all events, the request for Rule 11 sanctions is untimely. Thus, although no deadline for filing Rule 11 motions is specified in the text of the rule, "ordinarily the motion should be served promptly after the inappropriate paper is filed, and if delayed too long, may be viewed untimely." Peer v. Lewis, supra, 2010 WL 1997112 at *5 (quoting F.R.Civ.P. 11, advisory committee's note, p. 91). As pertinent here, "[a] party cannot delay serving its Rule 11 motion until conclusion of the case." Id. The Settlement Agreement, which "settle[d] finally all claims asserted in the Action" (Doc. 158-1, p. 2, ¶B), effectively concluded this case, and renders the Motion for Rule 11 Sanctions untimely. See Peer v. Lewis, supra; F.R.Civ.P. 11, advisory committee's note, p. 92 ("Parties settling a case should not be subsequently faced with an unexpected [sanctions order] ... that might have affected their willingness to settle...").[6]

---

authority requiring the attorney who signed the document to file the document, and each document was properly filed in the court's electronic docket by an attorney of record, thereby making that attorney responsible for the contents of the document. See U.S.D.C. M.D.Fl. Adm. Procedures for CM/ECF, ¶I.D.2. (The attorney assigned a log-in and password is responsible for documents filed with the attorney's log-in and password); see also Putnam v. City of Milwaukee, 2006 WL 3386887 at *2 (E.D. Wis. 2006)(unpub. dec.)(finding that the log-in and password used to e-file a document served as a signature for Rule 11 purposes). These petty allegations underscore the motion's lack of merit.

[6]For that reason, a court may not initiate a show cause order for the imposition of monetary sanctions under Rule 11 after settlement. See Rule 11(c)(5)(B), F.R.Civ.P. I see no reason why the plaintiffs, who purportedly assert these allegations to vindicate the

The Settlement Agreement also renders the plaintiffs' claims moot. Thus, it is axiomatic that, under Rule 11, "a party will not be subject to sanctions on the basis of another party's motion unless ... it refuses to withdraw that position...." F.R.Civ.P. 11, advisory committee's note, p. 91. Since the defendant agreed to "dismiss its ... counterclaims and prayers for relief in the Action" (Doc. 158-1, p. 2, ¶1), and requested an Order from the court directing consummation of the Settlement Agreement (Doc. 156), before the plaintiffs even filed their Motion for Sanctions, the motion is moot as to Rule 11 sanctions. See Erdman Automation Corp. v. Spadix Technologies, Inc., 2007 WL 3407733 at *1 (D. Minn. 2007)(unpub. dec.) (rejecting a Rule 11 motion because the party had filed its notice of intent to dismiss its counterclaim with prejudice before it was served with the Rule 11 motion); Progress Federal Savings Bank v. Lenders Assn, Inc., 1996 WL 57942 at *3 (E.D. Pa. 1996)(unpub. dec.)(Rule 11 motion rejected because the motion was filed after the claims had been rejected or settled and, therefore, "there was nothing for [the offending party] to withdraw or correct"); cf. Aerotech, Inc. v. Estes, 110 F.3d 1523, 1528-29 (10th Cir.

court's authority, should be permitted to assert arguments that the court could not raise itself at this point in the proceedings.

1997)(movant precluded from seeking Rule 11 sanctions because the motion was not filed until after the opposing party had moved to dismiss the offending claims). Accordingly, the request for Rule 11 sanctions against the defendant should be denied.

B. Rule 26(g), F.R.Civ.P.

The plaintiffs also argue that sanctions should be imposed against the defendant for violations of Rule 26(g), F.R.Civ.P. That rule requires a party to certify that its discovery production is complete, and that its discovery requests, responses, and objections are not frivolous or interposed for an improper purpose. Rule 26(g)(1), F.R.Civ.P. "Th[is] rule simply requires that the attorney make a reasonable inquiry into the factual basis of his response" and make a reasonable effort to assure that the client has provided all the information responsive to the discovery demand. F.R.Civ.P. 26(g), advisory committee's note, p. 159. A party may be sanctioned for improper certification. Rule 26(g)(3), F.R.Civ.P.

In this regard, the plaintiffs assert the incoherent argument that the defendant "signed and filed in two separate federal courts a staggering number of discovery responses and objections in perpetration of the original frivolous counterclaims with factual inconsistencies, for improper purpose

-24-

and without any basis in law..." (Doc. 162, pp. 15-16). The plaintiffs have neither identified the specific discovery requests and responses at issue, nor substantiated these vague allegations of wrongdoing. Therefore, this conclusory argument should be rejected.[7]

The plaintiffs also argue generally that they did not receive complete discovery from the defendant (see id.). However, the plaintiffs did not file any successful motions to compel discovery during the litigation. Consequently, the record does not show that the plaintiffs were entitled to additional discovery, much less that the defendant improperly certified in violation of Rule 26(g), F.R.Civ.P., that its production was complete.

Moreover, it is clearly too late to raise these allegations. Thus, in this court "[c]ounsel ... should not expect the Court to resolve discovery

---

[7]The plaintiffs also cryptically argue that the defendant "did not correct certification violating the rule [docs. 64 through 66]" (Doc. 162, p. 16) and that "the certifications made [by the defendant] in connection with [its] last flurry of discovery motions" amounted to "outright falsehoods" (id., p. 13). These arguments are meritless because, among other reasons, Rule 26(g), F.R.Civ.P., does not apply to motions. See Rule 26(g)(1), F.R.Civ.P. (certification applies to discovery responses and production).

Additionally, the plaintiffs' only example of a purported false certification is frivolous. Thus, the plaintiffs argue that the defendant intentionally listed an incorrect date on the certificate of service of a Motion for Protective Order to mislead the court that the motion was filed on an earlier date (Doc. 162, p. 14). There is no evidence to suggest this was anything but a clerical error. Moreover, considering that the date of all electronic filings is prominently identified on the first page of each motion, the plaintiffs' argument that the defendant intentionally placed a wrong date on the certificate of service to hoodwink the court does not even make sense.

disputes arising after the discovery completion date." Middle District Discovery (2001) at ¶I.F.1. A fortiori, there is no basis to examine discovery disputes after the parties settled all the claims in the case.

In particular, the plaintiffs have argued that the defendant wrongfully refused to produce documents absent a protective order, and that the defendant unlawfully encouraged witnesses not to appear for depositions (Doc. 162, pp. 4, 15). These disputes were previously considered by this court and were not resolved in the plaintiffs' favor. It is therefore frivolous for the plaintiffs to reassert these disputes as a basis for sanctions against the defendant.

Thus, I granted the defendant's request for the entry of a confidentiality order in this case (Doc. 45). Thereafter, I admonished both parties for not cooperating in drafting the confidentiality order. Thus, I specified that "both parties are at fault for failing to resolve this issue" (Doc. 53, p. 2 n.*).

With regard to the parties' lack of cooperation concerning depositions scheduled in California, I explained in a lengthy Order (Doc. 149) that both parties incorrectly filed in this court motions regarding subpoenas issued from the California district court. I also cautioned the

plaintiffs that their subpoenas were defective because they did not give the deponents adequate notice (see id.). Consequently, the plaintiffs' argument that the deponents had no legal basis to disregard the subpoenas is inaccurate.

I added, moreover, that, "throughout these motions, each party accuses the other of failing to confer properly and show consideration for the schedules of the deponents and opposing counsel. The court refuses to engage in futile finger-pointing" (id., p. 8). Thus, this Order clearly informed the plaintiffs that, in the court's view, they were not faultless in the dispute. Nonetheless, they inexplicably reassert these arguments and, in doing so, misleadingly portray their role in the dispute and fail to acknowledge the court's findings.

In sum, the plaintiffs have identified no basis for imposing sanctions against the defendant pursuant to Rule 26(g), F.R.Civ.P. Accordingly, the request for sanctions pursuant to Rule 26(g), F.R.Civ.P. should be denied.

C. Inherent Power

Finally, the plaintiffs seek an award of sanctions against the defendant under the court's inherent power. The court's inherent power "extends to a full range of litigation abuses," but it requires a showing of bad

faith and this standard narrows the range of conduct that can satisfy the threshold for sanctions. Peer v. Lewis, supra, 2010 WL 1997112 at *6.

In this connection, the Eleventh Circuit explained (In re Walker, 532 F.3d 1304, 1309 (11th Cir. 2008)(citations omitted)):

> A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order.

The court's inherent power, moreover, "must be exercised with restraint and discretion." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980).

The plaintiffs argue that sanctions are warranted under the court's inherent power based on the defendant's "pursuit of unsubstantiated counterclaims, unreasonable opposition to [the plaintiffs'] diligent efforts to move the case forward in its merits, and needless multiplication of proceedings in multiple jurisdictions" (Doc. 162, p. 22).

The plaintiffs' rhetoric aside, the record merely reveals a contentious relationship between counsel that caused numerous discovery disputes. Neither these circumstances, nor the defendant's dispute of the

plaintiffs' claims, shows bad faith on the part of the defendant.[8] Accordingly, the plaintiffs' request for the imposition of sanctions pursuant to the court's inherent authority should be denied.

## V.

As I indicated earlier in this report and recommendation, if sanctions are warranted in this case, they are appropriately imposed against the plaintiffs. In this connection, the defendant requested in its motion, and it is entitled under the Settlement Agreement, to an award of attorneys' fees and costs incurred in its meritorious enforcement of the Settlement Agreement (Doc. 158, p. 3; Doc. 158-1, p. 4, ¶7 (the prevailing party in a proceeding to enforce a provision of the Settlement Agreement is entitled to recover attorney's fees, costs and expenses from the losing party)).

---

[8] The plaintiffs' reference to a multiplicity of proceedings in "multiple jurisdictions" concerns the defendant's filing of Motions to Quash subpoenas in a California district court. The plaintiffs do not present any legal authority that this court may impose sanctions based on a party's conduct in another court. Contra Woodard v. STP Corp., 170 F.3d 1043, 1045 (11th Cir. 1999)(in the context of Rule 11, sanctions are properly applied only to cases before the court, not to cases in other courts). Furthermore, the plaintiffs fail to show any wrongdoing by the defendant in the California court. They merely reference the California district court docket which shows that the defendant's motions were denied as moot.

At the hearing, defense counsel John H. Rains, III, stated, in an effort to be conciliatory and bring this litigation to an end, that the defendant was not necessarily pressing the imposition of such sanctions (Doc. 173, p. 18). However, it appears appropriate to me that, if the plaintiffs pursue this frivolous motion further, the defendant should be awarded its attorneys' fees and costs in connection with enforcement of the Settlement Agreement.

Thus, the defendant reasonably believed that the Settlement Agreement and their payment of $50,000 to the plaintiffs would bring an end to the litigation. However, the plaintiffs have instead pursued these stale and frivolous contentions, thereby causing the defendant to incur unnecessarily further attorneys' fees and costs. The Motion for Sanctions, moreover, appears to be an unmeritorious attempt to subvert the terms of the Settlement Agreement. Therefore, an award of attorneys' fees and costs to the defendant would be appropriate if the plaintiffs continue to pursue this matter.

## VI.

For the foregoing reasons, I recommend that the Motion to Enforce the Settlement Agreement (Doc. 158) be granted, the Motion to Extend the Time to Dismiss the Case (Doc. 159) be denied, and the Motion for Sanctions (Doc. 162) be denied. Further, I recommend that the defendant

be awarded its reasonable attorneys' fees and costs incurred in connection with enforcement of the Settlement Agreement if the plaintiffs continue pursuit of the frivolous Motion for Sanctions.

Respectfully submitted,

THOMAS G. WILSON
DATED: JULY 6, 2010     UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. 636(b)(1).